UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF INDEPENDENT
SCHOOLS OF GREATER
WASHINGTON, *et al.*,

    Plaintiffs,

    v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 16-1778 (JEB)

## MEMORANDUM OPINION

In a Memorandum Opinion and separate Order issued last April, this Court granted summary judgment in favor of Plaintiffs – the Association of Independent Schools of Greater Washington (AISGW), the River School, and two individual teachers – on their claim that a D.C. drug- and alcohol-testing policy pertaining to employees of childcare facilities violated the Fourth Amendment. See Ass'n of Indep. Sch. of Greater Washington v. D.C., 2018 WL 1972459 (D.D.C. Apr. 26, 2018). The Court determined that the random drug-testing requirements imposed by the District's Office of the State Superintendent of Education (OSSE) on nursery-school teachers were unlawful, as they did "not fit within the closely guarded category of constitutionally permissible suspicionless searches." Id. at *12. The Court therefore granted Plaintiffs' Motion for Summary Judgment and ordered that OSSE "shall not enforce its random, suspicionless drug- and alcohol-testing policies against Plaintiffs." ECF No. 29 (Order). Dissatisfied with this outcome and alleging that the Court failed to address certain of Plaintiffs' original claims, the District now moves to alter the judgment. Finding the majority of

1

Defendants' assertions to be without merit, the Court will largely preserve its prior Opinion and Order intact.

**I.     Background**

This suit was initiated in September 2016 as a response to the District's policy requiring the random, suspicionless drug testing of employees of childcare facilities.  See AISGW, 2018 WL 1972459, at *3.  Plaintiffs are an association that includes such entities; one of its member schools, the River School; and Katherine Brebbia and Lauren Walence, two River School teachers.  Collectively, Plaintiffs opposed the imposition of the testing requirement, which was enacted pursuant to a 2004 statue, the Child and Youth Safety and Health Omnibus Amendment Act, which introduced random drug and alcohol testing for those employees in "safety-sensitive positions." Id. at *1.  Almost a decade later, in 2013, OSSE used its implementing authority under the Act to categorize the personnel of child-development facilities as "safety-sensitive," thus subjecting them to random, suspicionless urinalysis. Id. at 2.

After being informed by OSSE that it would be required to comply with this new requirement, the River School issued a series of objections to the policy from April 2014 through June 2015, repeatedly informing the Office that it would not adopt random drug testing of its employees.  Id.  After much back and forth, River was ultimately informed that acceptance of the policy was a condition of its OSSE licensure, and, on January 11, 2016, it received a Notice of Intent to Revoke its child-development-center license for failure to "establish mandatory drug and alcohol testing policies and procedures that are consistent with the requirements of District law for safety-sensitive employees." Id. at *3.  Faced with this penalty, the School "adopted a drug and alcohol testing policy that included random testing," as did the

other eight AISGW member schools that hold OSSE licenses as child-development facilities. Id.

Yet AISGW and River continued to object to the random-search requirement, and, having failed to reach a resolution with OSSE, they brought the instant suit. Plaintiffs' Complaint alleged that requiring child-development facilities to implement a random drug- and alcohol-testing policy was a violation of (1) the Fourth Amendment and (2) the District of Columbia's Administrative Procedure Act (DCAPA). See ECF No. 1 (Complaint), ¶¶ 52-56. As relief for these alleged violations, Plaintiffs requested a declaratory judgment that "the implementation and enforcement of OSSE's random drug- and alcohol-testing requirement violates Plaintiffs' Fourth Amendment rights" and the DCAPA, an injunction "prohibiting OSSE from enforcing its drug and alcohol testing requirement against Plaintiffs," and "[m]ake-whole relief, including but not limited to damages." Id. at 14.

This past spring, the Court granted summary judgment on the basis of Plaintiffs' Fourth Amendment claim and enjoined Defendants from enforcing the random-testing requirement against them. See ECF No. 29 (Order). The Court's Opinion concluded that, although the District had a "sincere" interest in protecting the welfare of young children, such governmental motivation did not "rise to the level of immediacy or concreteness needed to justify the random, suspicionless testing of nursery-school teachers." AISGW, 2018 WL 1972459, at *12. The Court therefore found that such personnel could not "be subjected to random, suspicionless

3

searches as a condition of their employment," id., and that Plaintiffs were "entitled to judgment as a matter of law on [their] constitutional claim." Id. at *7.

On May 24, the District filed a Motion to Alter the Court's Judgment, see ECF No. 32 (Motion), which Plaintiffs subsequently opposed. See ECF No. 34 (Response). The Court now turns to Defendants' arguments regarding various alleged errors in its prior Opinion and Order.

## II. Legal Standard

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry. The Court must apply a "stringent" standard when evaluating Rule 59(e) motions. See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted); see also 11 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2810.1 at 158-62 (3d ed. 2012) (stating that the "four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "prevent[ion of] manifest injustice," and "intervening change in controlling law"). Critically, Rule 59(e) "is not a vehicle to present a new legal theory that was available prior to judgment." Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012).

## III. Analysis

In seeking alteration, Defendants raise three points. First, they contend that the Court "did not address whether the District violated Plaintiffs' Fourth Amendment rights." Mot. at 4. Second, they posit that the Court also did not "find municipal liability under [42 U.S.C. §]

4

1983," and third, they state that it did not "resolve the DCAPA claim." Id. at 4-5. Taken together, Defendants argue that these alleged lacunae in the Court's Opinion constituted error, as it "enter[ed] final judgment for Plaintiffs without resolving all claims in the litigation." Id. at 5. The Court takes each of these assertions separately.

 A. Fourth Amendment

The District's first basis for alteration is perhaps its most puzzling. Defendants posit that the Court erred in finding that the OSSE suspicionless-search policy violated the Fourth Amendment because Plaintiffs never established that they were, in fact, "searched." Mot. at 8. Under the District's theory of the Fourth Amendment, the proscription against unreasonable searches and seizures is "only implicated when a 'search' has occurred." Id. at 6. In this case, the city thus believes that, to prevail, Plaintiffs themselves must have actually been tested under the OSSE policy. This is incorrect.

It is well established that a drug- or alcohol-testing policy may run afoul of the Fourth Amendment even if the individual or entity challenging the program was not physically tested. See, e.g., Lebron v. Sec'y of Fla. Dep't of Children & Families, 772 F.3d 1352, 1357, 1378 (11th Cir. 2014) (considering class-action challenge to Florida's public-benefits-drug-testing requirement brought by Plaintiff who "refused to take the test" and finding that such testing "offends the Fourth Amendment"); Hatley v. Dep't of Navy, 164 F.3d 602, 603 (Fed. Cir. 1998) (considering whether "drug testing program to which Petitioner was subject was [] an unreasonable search under the Fourth Amendment" when plaintiff refused to submit to random testing); Willis by Willis v. Anderson Cmty. Sch. Corp., 158 F.3d 415, 417 (7th Cir. 1998) (analyzing Fourth Amendment challenge to school drug-testing policy brought by student who refused to provide urine sample); Thomson v. Marsh, 884 F.2d 113, 114 (4th Cir. 1989)

5

(considering Fourth Amendment challenge to Army drug-testing program brought by plaintiffs who refused to submit to test); Lewis v. Gov't of D.C., 282 F. Supp. 3d 169, 174-75 (D.D.C. 2017) (addressing Fourth Amendment challenge to D.C. drug- and alcohol-testing policy brought by Plaintiff who refused to submit to test). Nor is Skinner to the contrary, as that case addressed the propriety of a given testing program – not a specific search or intrusion conducted pursuant to the policy. See Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 633–34 (1989) (holding that because "testing procedures" mandated by Federal Railroad Administration "effect searches of the person," the regulations "must meet the Fourth Amendment's reasonableness requirement") (emphasis added).

Perhaps the most obvious examples of this premise are the numerous cases analyzing the Fourth Amendment implications of drug- and alcohol-testing policies before they go into effect. See, e.g., Nat'l Treasury Employees Union v. U.S. Customs Serv., 27 F.3d 623, 623 (D.C. Cir. 1994) (addressing Fourth Amendment challenge to United States Customs Service's proposed expansion of drug-testing program); Harmon v. Meese, 690 F. Supp. 65, 65-66 (D.D.C. 1988) (considering Fourth Amendment challenge seeking to enjoin implementation of Department of Justice's proposed drug-testing policy). While it would have been impossible for those challenging such policies to have been subjected to testing, courts have not hesitated to apply the Fourth Amendment. So, too, here. Although Plaintiffs may have not themselves been tested pursuant to the OSSE policy, they were nonetheless subject to the policy, and the Court did not err in finding that the testing regime itself was contrary to the Constitution as applied to such individuals and entities.

Additionally, the Court notes that in opposing Plaintiffs' Motion for Summary Judgment, the District never relied on the argument that there was no existing "search." Rather, Defendants

6

argued that the suspicionless-testing requirement did not violate the Fourth Amendment because "the District's interest in random testing outweighs caregivers' privacy interests and renders individualized suspicion impractical." ECF No. 25 (Opp. to MSJ) at 6. The District's briefing before this Court in no way evinced a conviction that the Fourth Amendment did not <u>apply</u> to the testing policy; rather, it explained why, under governing Fourth Amendment precedent, Defendants believed such searches were <u>permissible</u>. Similarly, while the District now asserts that it "had no opportunity for discovery on whether Plaintiffs were, in fact, involuntarily 'searched,'" the Court observes that such a justification for requesting discovery is nowhere to be found in Defendants' original opposition. See Mot. at 9; Opp. to MSJ at 23 (stating that discovery would allow for inquiry into Plaintiffs' assertions "regarding classroom environments at The River School, caregivers' daily practices and their privacy interest, and the efficacy of random testing, all of which pertain to plaintiffs' Fourth Amendment claim"). The city's *post hoc* rationales are thus entirely unavailing: the Court could not possibly have erred in refusing to "afford[] the District discovery to test the veracity" of an issue Defendants never raised. See Mot. at 9.

 B. <u>42 U.S.C. § 1983</u>

The District next asserts that "the Court did not determine municipal liability under Section 1983." Mot. at 1. According to Defendants, "To prevail on a Section 1983 claim, Plaintiffs must establish that a municipal custom, policy, or practice caused a violation of their constitutional rights," and here, "Plaintiffs did not discuss the standard for municipal liability or demonstrate how they satisfy that standard." Id. at 5, 7. The District contends that, in light of this alleged deficiency, the Court "could not issue an injunction under Section 1983," and the injunctive relief it ordered must therefore have "presumably [been] under the Court's equitable

7

powers." Id. at 8.  Under Defendants' theory of the case, Plaintiffs presented both a § 1983 claim alleging Fourth Amendment violations and a freestanding constitutional claim, and the Court addressed only the latter.

As Plaintiffs correctly point out, the District's various contentions are not borne out by the record.  The Court begins with Defendants' "puzzling position that there is a distinction between Plaintiffs' Fourth Amendment claim and Plaintiffs' Fourth Amendment claim under [] §1983."  Resp. at 2 (internal quotation marks omitted).  Having reviewed the Complaint once more, the Court remains confident that the schools and teachers sought to enjoin the city from enforcing its random, suspicionless-testing policy pursuant to § 1983.  See Compl., ¶ 14 ("Plaintiffs' constitutional claims arise under the U.S. Constitution and are brought pursuant to 42 U.S.C. § 1983").  This was how the Court understood the Complaint at the time of its ruling, and this is the reasonable manner in which to interpret Plaintiffs' Fourth Amendment claim, as § 1983 is the vehicle by which a litigant may allege that the District has violated his or her constitutional rights.  See Costello v. D.C., 826 F. Supp. 2d 221, 224 (D.D.C. 2011).  Although Defendants are correct that Plaintiffs did not cite § 1983 in the heading to their Fourth Amendment count, see Compl., ¶¶ 52-53, they did clearly state that the statute provided the basis for their constitutional allegations.  The Court therefore rejects the District's contention that Plaintiffs' Complaint included some secondary, free-floating constitutional allegation – or that the injunctive relief ordered was pursuant to the Court's "equitable powers" rather than the well-pleaded, explicit ground for relief under § 1983.

The Court finds similarly unavailing Defendants' assertion that, in order to grant such an injunction, it was required to explicitly spell out a finding that "a municipal custom, policy, or practice" caused the Fourth Amendment violation.  See Doe ex rel. Doe v. Little Rock Sch. Dist.,

8

380 F.3d 349, 351 (8th Cir. 2004) (analyzing § 1983 claim against school-district policy implementing random, suspicionless searches of students under Fourth Amendment reasonableness inquiry without addressing municipal liability). While the District is of course accurate in identifying municipal liability as a fundamental underpinning of § 1983, it never argued that the OSSE policy at issue in this case was somehow not attributable to the city. For Defendants to only now raise the issue is both improper under Rule 59(e) and puzzling in light of the facts of the case. See Resp. at 4 ("If Defendants are arguing that the challenged drug testing policy was not a municipal policy, such an argument was long ago forfeited and in any event would be frivolous."); see also Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, [or] securing a rehearing on the merits.").

Plaintiffs were challenging the random drug-testing requirements imposed by OSSE, a state office that was given authority over such regulations by the District's Child and Youth Safety and Health Omnibus Amendment Act of 2004. Even in its latest Motion, the District does not substantively dispute that the drug-testing policy is therefore a "municipal custom, policy, or practice." Nor could it, given that "chief among" the "ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983" is the "explicit setting of a policy by the government that violates the Constitution." Lewis v. D.C., 2018 WL 2739919, at *6 (D.D.C. June 7, 2018) (quoting Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)) (internal quotation marks omitted). Here, the District's own law gave OSSE oversight to regulate child-development facilities such as Plaintiffs' schools, and Defendants never alleged that the suspicionless-testing policy established pursuant to that authority was somehow beyond the bounds of municipal action. To the extent, however, that there remains any confusion over

9

whether the prior Opinion addressed a District policy, the Court now finds that the OSSE regulation more than suffices as a source of municipal liability under § 1983.

Finally, Defendants seem to advance a version of their § 1983 argument premised on Plaintiffs' request for damages – namely, that the Court erred in granting injunctive relief pursuant to § 1983 without addressing the prayer for damages under the statute. See Mot. at 5-6. This issue is easily resolved here, as Plaintiffs have now waived any such request. See Resp. at 3. The Court therefore need not speculate as to how it would have ruled with respect to the issue of damages, as it is now a moot point. As Defendants acknowledge, the Order granted Plaintiffs full injunctive relief; with damages off the table, there is nothing left for the Court to consider with respect to remedies under § 1983. See Mot. at 10 ("Plaintiffs obtained the relief they sought.").

### C. DCAPA

Finally, the Court turns to the District's argument regarding Plaintiffs' DCAPA claim. The Opinion concluded that "[b]ecause Plaintiffs are entitled to summary judgment on their constitutional count, the Court need not go on to analyze their DCAPA claim." AISGW, 2018 WL 1972459, at *4. Defendants now assert that the "Court should have dismissed Plaintiffs' DCAPA claim for lack of jurisdiction" – an argument they raised in their briefing – or "at a minimum . . . should have [] dismissed [the claim] as moot." Mot. at 10. The Court notes that dismissing the count as moot could complicate any appellate review of those alternative grounds

for relief, but because Plaintiffs agree with Defendants' proposal, see Resp. at 5, the Order shall be amended to reflect such dismissal.

## III. Conclusion

As a closing note, the Court observes that although both sides include footnotes relating to the availability of attorney fees (or lack thereof) based on the prior Opinion, such arguments are more appropriately made in fee motions. It therefore will reserve any analysis of these issues until such briefing takes place. As to the substantive arguments made in Defendants' Motion, the Court will issue a contemporaneous Order denying them except as relating to the DCAPA.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: July 11, 2018